132 A.2d 51 (1957)
Estella ROBINS, Plaintiff,
v.
Mildred GARVINE, Defendant.
Court of Chancery of Delaware, New Castle.
May 23, 1957.
Joseph Donald Craven of Craven & Hurley, Wilmington, for plaintiff.
John S. Walker and L. Robert Hopkins, Wilmington, for defendant.
MARVEL, Vice Chancellor.
In order to grant plaintiff the relief she requests after final hearing, namely recovery of real estate from its present owner *52 of record, this Court would have to nullify a consummated tax sale. The property which plaintiff seeks to recover consists of a lot and home on Marsh Road in Brandywine Hundred.
The complaint named as defendant the person who acquired title to the property at such sale and prayed for an order restraining defendant from interfering with plaintiff's present possession and for an order directing defendant to convey the premises to plaintiff. Temporary relief was granted in the form of a restraining order maintaining plaintiff in possession and enjoining the selling or placing of any encumbrance against the property in question by defendant. On the return of a rule to show cause why a preliminary injunction should not issue, defendant attacked the power of this Court to grant the relief requested, however, a preliminary injunction in the language of the restraining order was entered. This decision follows final hearing.
Plaintiff and her husband purchased the property in question in 1946. They proceeded to build on it the following year, personally doing much of the actual construction and thereafter established a home and a place for themselves in the community. Mr. Robins became seriously ill in 1954 and died in 1956.
In the spring of 1954, plaintiff and her husband went to the New Castle County Court House to inquire about and to pay any taxes that might have accrued on the Marsh Road property here involved. They were informed that County taxes assessed against such lands and its improvements had been paid. Dissatisfied with this report, Mr. Robins set about making further inquiry when he became faint and had to be assisted from the County Building. Consequently the full story concerning the tax status of what Mr. and Mrs. Robins believed to be their property was not disclosed to them. Thereafter, Mr. Robins' health deteriorated gradually. In 1954 he had been forced to give up his job, and until his death in June, 1956, remained an invalid under the care of his doctors and his wife.
In April, 1956 plaintiff returned to the County Court House to follow up investigation of the tax status of what she believed to be her property and that of her husband's and was informed that on May 2 1952 such property had been sold to defendant as a result of a statutory proceeding to collect a County tax delinquency of $26.04. This sale had followed the entry of a tax judgment for the tax year 1949-1950 under the provisions of § 8722 of Title 9 Del.C., which sale was confirmed by the Superior Court of New Castle County on May 8, 1952 pursuant to the provisions of § 8730 of Title 9 Del.C. In addition to admitting the essential facts of the tax sale and pleading the statutes governing such sale, defendant's answer alleges that the complaint fails to state a cause of action upon which relief can be granted in this Court and pleads laches.
Plaintiff recognizes that a collateral attack on a final judgment which adjudicated her rights in land is difficult if not impossible to sustain short of a showing of lack of jurisdiction or proof of extrinsic fraud or the like, and briefs her case as one in the nature of a bill quia timet or to quiet title, claiming that equity should not recognize defendant's title in the light of the facts and circumstances surrounding its conveyance to defendant. While it is well established that jurisdiction to entertain actions to clear or quiet title exists in this Court, Suplee v. Eckert, Del.Ch., 120 A.2d 718, plaintiff's case, which is in effect an attack on the regularity of the tax sale proceeding, if accepted, would permit her to relitigate in this forum matters which have been finally adjudicated against her interests in the Superior Court.
While it is regrettable that plaintiff should be exposed to being evicted from *53 her home by the holder of record title as a result of a statutory proceeding of which plaintiff was apparently unaware until too late, to direct defendant to convey her record title to plaintiff for the reasons advanced by plaintiff would entail the vacating of a final judgment entered by a court of competent jurisdiction on grounds other than that of extrinsic fraud or the like.
In the Suplee case this Court decided that it had jurisdiction[1] to determine whether or not a purchaser at a tax sale in Sussex County acquired an unencumbered title or merely the "title of the taxable" subject to liens of record against it. In the present case plaintiff asks this Court to re-examine and in effect to set aside a tax sale judgment which adjudicated her personal rights in real estate in New Castle County. Under the facts before me I am satisfied that such relief could be granted only as a result of an unwarranted attack on proceedings of the Superior Court of New Castle County.
The tax sale of which plaintiff complains was confirmed by order of the Superior Court of New Castle County on May 8, 1952, a fact which plaintiff concedes. Such order may not in effect be set aside on plaintiff's application in the absence of a showing of lack of jurisdiction or of evidence of fraud or the like disclosing that plaintiff has not had her day in court. Plaintiff's proof fails on both scores.
Plaintiff charges irregularities and defects on the record and introduced evidence in an effort to prove that the Sheriff's return as to the posting of the tax sale monition was not in conformity with the actual facts,[2] that the writ of sale and the sale advertisements did not mention improvements on the property to be sold, that newspaper publication of the advertisement of sale was improper and that the Sheriff's return of sale did not show where handbills concerning the sale were posted. Finally plaintiff introduced evidence to the effect that the property for which defendant made a successful bid of $200 then had a market value in excess of $5000.
I conclude after trial that much of this evidence should not have been admitted in view of a judicially approved public policy concerning our property tax laws and the procedures therein provided for collection. The giving of actual notice to an interested party as to the assessment of taxes and even of the pendency of a tax claim is not a prerequisite to the validity of a proceeding to collect an asserted tax delinquency, Pottock v. Mellott, 2 Terry 361, 22 A.2d 843. Actually much of plaintiff's evidence would have been of questionable weight in direct proceedings in the Superior Court in view of the general incontestability of a Sheriff's return in Delaware, Cohen v. Krigstein, 10 Terry 256, 114 A.2d 225, and Abbott Supply Company v. Shockley, Del.Super., 128 A.2d 794, although undoubtedly the inadequacy of *54 defendant's bid at the tax sale would have been a matter for consideration by such Court if the point had been raised in opposition to confirmation of such sale. Compare Central National Bank of Wilmington v. Industrial Trust Co., 4 Terry 530, 51 A.2d 854.
Plaintiff infers that the striking down to defendant of the property in question for the sum of $200 is so shocking as to in itself require this Court to grant the relief prayed for, it being contended that through defective posting, advertising and the like a bona fide tax sale did not take place. Plaintiff, however, failed to introduce any evidence that fraud was perpetrated at any stage of the tax sale proceeding from the entry of judgment by the County Treasurer to delivery of the Sheriff's deed. The total County tax delinquency on the Marsh Road property as of the date of sale was $178.85, and defendant merely bid approximately what was necessary to take title.
There being no evidence of fraud or undue influence exerted over County officials or any other person involved in the tax sale, this Court may not in a collateral proceeding consider the matter of the amount of defendant's bid in relation to the value of the property purchased at the public sale.
Plaintiff points to defendant's failure to take possession following the sale, but it is obvious that defendant had no right to possession until expiration of the redemption period of one year from the date of sale. Furthermore, defendant was not legally required to take possession at any specific time following expiration of the redemption period.
On notice, an order will be entered dissolving the outstanding preliminary injunction and dismissing the complaint.
NOTES
[1] In Delaware Ass'n of Police v. Julian, 33 Del.Ch. 106, 90 A.2d 792 this Court having jurisdiction specifically to enforce a contract for the sale of land considered defenses having to do with the validity and effect of actions taken under the so-called County Monition Statute here involved, however, such defenses were raised by a stranger to the tax sale proceeding.
[2] The Prothonotary's notation on the Vend. Exp. Monition (plaintiff's ex. 11) purports to report a return on February 4th of a posting of the monition on February 6th, but this is an obvious typographical error.

Section 8730 of Title 9 Del.C. states that: "Upon the return of the proceedings under a writ of venditioni exponas, the Superior Court may inquire into the regularity of the proceedings thereunder, and either approve the sale or set it aside."
Rule 60 of the Superior Court, Del.C. Ann. permits action to be taken for relief from a judgment or order either on the basis of clerical mistakes or of mistake, inadvertence, excusable neglect or fraud.